Good morning, Your Honors. Can you see all right? Do you have enough light? Yes, I'm fine, Your Honors. I'd like to reserve approximately three minutes for rebuttal if I could. The primary issues addressed in this appeal is whether the district court overstepped its mounds by essentially granting summary judgment and, number two, whether the government in regards to that grant had made a sufficient showing under the cases of 405, 405,000 and 22249 Dolorosa Road. As to the first argument, as the Court is well aware, the Court must determine in reviewing a summary judgment motion, viewing the evidence in the light most favorable to the non-grooving party, whether there were genuine issues of material fact existed and whether the district court correctly applied the law. There's three guiding principles that we've cited in our briefs, which I would like to again bring to the Court's attention. First of all, credibility determinations, weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not the functions of the district court. Number two, for purposes of a summary judgment motion, all inferences drawn from the underlying facts must be viewed in the light most favorable to the opposing party, which was us. And finally, summary judgment is not appropriate where the record, including the documents and pleadings, establish facts which give rise to contradictory inferences, one of which supports the party opposing summary judgment. The fundamental problem is the district court looked at the eight facts that the government cited, or alleged facts, which are during the search of the residence they found illegal GBO, steroids, marijuana, and drug paraphernalia, claimant had a lack, alleged lack of legitimate sources of income, small denominations of currency were found, the manner in which the currency was packaged, the presence of money counting machine, claimant's concealment of the funds in his residence and vehicle, his deceptive and inconsistent statements to law enforcement officers, and his admission to the law enforcement officers that he once sold drugs. The district court took all those facts and said that the, that a jury could have found that it was sufficient to establish the forfeitability of the evidence. We absolutely, totally don't disagree with that. There is no question that a reasonable trier of fact could have found that. That's not the issue, though. The issue is whether the jury could have adopted a contrary inference. And we rely substantially on two factors. Number one, the declaration of Michael Levine, whose credentials are unassailable. Very briefly, he was a special operator. Well, I'm not even going to go through it all. It's all at pages 14 and 15 of the brief. And he said, as to a number of these factors, that they were no more indicative of drug dealing than they were of any other variety of criminal offenses. If this was a general criminal. Kennedy, isn't 54 bottles a lot of bottles? There was absolutely zero evidence from the government that this was a commercial quantity of GBL. Isn't 54 bottles a lot of bottles? They're very tiny little bottles. And, in fact, people drink them. I mean, these guys drink it for the gym is what they did. And, indeed, California had only made it illegal two months earlier. But the point is, and I've been here going on 30 years now, is how many times I've come to the Court of Appeals and various judges say to me, or other counsel, well, where's that in the record? There is nothing in the record that this was a commercial quantity of GBL. More significantly, and I think where the district court initially really missed the point, was what was missing in this case. Mr. Levine says, look, I'm an ATF agent, IRS agent, customs agent, and a drug enforcement agent. And, look, they're claiming this guy's a drug dealer, but there were no drug ledgers. There were no payout sheets. There was no repackaging material. There were no weapons to protect the drug supply. The government didn't even claim that there was a positive canine alert to any of the money. And he said, look, you look at all those factors, and that's probably indicative of a less likelihood that this is drug proceeds. And, indeed, I was thinking as I was driving up here last night, if you look at the eight factors that the government has pointed out, I'd like to present a hypothetical. Suppose you have an individual that's notorious as a bookmaker. They go search his house. And they find a lack of legitimate sources of income in their investigation, small denominations of currency, a money counting machine, the money's wrapped in rubber bands, the individual has concealed the funds in his residence, and he gives deceptive and inconsistent statements to law enforcement. And yet the government says, well, you know what, we're going to do a drug forfeiture on this based on all those facts. And are we going to say that that individual would have no right to present that to the jury and say, look, all this indicia of drug dealing is missing. And the jury doesn't have the right to consider that? The only different facts that I left out was, number one, in this case, Mr. Boltinghouse made an admission that he had sold marijuana in the past, and there's a factual dispute about that. The government says he said two years ago. He says I haven't done it since high school, which was nine years earlier. And secondly, the drugs in the house. He was convicted in State court, was he not? He was convicted in State court, so that is on appeal right now, and actually it's – I won't get into all the details of that, but there's been extensive additional briefing on the question of whether the GBO was even illegal. That – I would also point out that that wasn't, I believe, in the record or – I don't think his conviction had taken place at the time the Court ruled. And so the only fact I left out of my hypothetical is the fact that there was GBO, steroids, marijuana, and drug paraphernalia found at the residence. What would be your argument to the jury as to where he got the funds? My argument to the jury would be, ladies and gentlemen of the jury, the government's burden in this case, as the Court has instructed you, is to prove by a preponderance of the evidence that this is not just illegal money, but is drug proceeds. And they have not carried their burden. They haven't brought in a single informant that has said he ever sold drugs. They haven't brought in any evidence of a single drug transaction. But you've got an inference sitting out there that a jury is going to pick up and say, all right, where'd he get it? And you're not going to have any explanation, I gather. Our explanation is that they can't prove it's drug-related. And that takes us to the – Do you think the jury would buy that? Do I think the jury would buy that? When they get – when we get to the second argument, I think that they may – it doesn't matter whether I think they will or they won't. I think that they have a right to make that decision. And the district court took it from them. And that gets to our second argument, which I'd like to cover very briefly – very quickly, yet is as significant, if not even more significant. And that is this Court's holding in the United States versus $405,000, and the second case that follows shortly thereafter, 22249, Dolorosa. In 405, the Court said – this Court said, Probable cause to believe property is involved in some sort of illegal activity is not enough. The government must have probable cause – must have probable cause to believe the property is involved in an activity subject to the specific forfeiture statute it invokes. The mere suspicion property is connected to some illegal activity is not enough to establish probable cause it was connected to drugs. In this case, there was little doubt the government presented sufficient evidence that the appellants were heavily involved in the illegal acquisition and distribution of derivative chemicals used in the manufacture and distribution of methamphetamine. What the agent's affidavit lacks, however, is a significant connection between the detailed narcotics activity and particular assets targeted by the government's forfeiture proceeding. That's followed by 22249, Dolorosa, which says that the evidence tends to show that the appellant was a large-scale drug dealer who possessed large amounts of cash and other expensive assets, which he tried to conceal, and that he lacked a legitimate source of income. That evidence is insufficient, however, to establish the requisite connection because – between his drug activity and the property. And that's what we – I mean, here we have a much better case for the appellant. They haven't shown you a single drug transaction he ever did, whereas in those other cases they had a long record of drug transactions. I have a minute and a half left, and so I'd like to reserve that if I could. Victor Rogers, Jr. Good morning, members of the panel. May it please the Court, I am Victor Rogers, and I am appearing on behalf of the appellee of the United States of America. To respond to the arguments made by my opponent, the first response I have is my opponent argues that all inferences must be drawn in favor of the non-movement on summary  But my opponent ignores one critical fact. The rule is all reasonable inferences may be drawn against the – not against the moving party on summary judgment. And the district court cited a case that is directly on point. In its opinion, the district court cited the case of National Union Insurance Company v. Argonaut Insurance Company. There, there was a dispute over an insurance agreement. The defendant in the lawsuit, the insurance company, Argonaut Insurance Company, offered a detailed factual history concerning the development and the facts of that insurance provision contract. In response, the plaintiff, National Insurance Company, just like the claimant here, did not dispute any of the facts, but instead National Insurance Company, just like the claimant here, attempted to rely upon the rule drawing of all inferences against the non-movement. The court indicated, and the non-movement, National, argued that the contract was ambiguous, it was susceptible to more than one meaning, and therefore, National argued that the court was required to draw inferences about the contract's meaning in favor of National and accept National's interpretation of the contract. But the Ninth Circuit rejected that argument, and properly so. Since there was absolutely no evidentiary support in the record supporting National's interpretation of the contract, the court held that it is only required to draw reasonable inferences in favor of the non-movement. And a non-movement cannot expect a court to draw inferences which are wholly unsupported by the record. But doesn't it matter who bears the burden in the first instance? That is correct. In the National Union case, who was that? In the first instance, the movement always bears the burden on summary judgment. I mean, in terms of the ultimate fact, because as a move-on, actually, you bear no burden whatsoever if you don't bear the burden in the ultimate adjudication. And so if you're a defendant in a case, you can bring summary judgment and put plaintiff to its proof to survive summary judgment. That's not the case when the move-on bears the burden in the ultimate determination. In National, the movement bore the burden of summary – the burden of persuasion, the initial burden of production in the case and as far as summary judgment was concerned. Just as the government bears the initial burden of production as well here. And so the rule is you do not draw all inferences. The inferences have to be reasonably supported by the record. And in this case, what the declarant, Mr. Levine, testified to was that it was possible that the defendant assets were tied to prostitution, larceny and a whole bunch of other crimes that he speculated about. There is no evidence in the record that Mr. Boltinghouse was involved in any of those   was involved in any of those other crimes. And I know that's been pointed out by appellant during argument, that is, the things that were not there, the dog that did not bark. Could you speak to that? Absolutely. GBL is odorless. The declarant is testifying as though this was a drug-trafficked case, that this was a marijuana case where a drug – a dog would bark. But I would also point out that there are two opinions that talk about the fact that what is critical is that we are applying the aggregate of the facts test. And what is critical is the facts that are in the record. It is not dispositive that one or more facts is absent from the record in applying the aggregate of the facts test. And with respect to that holding, United States v. Padilla, 888 F2D 642-644, a Ninth Circuit case, and United States v. U.S. Currency, $83,310.78, 851 F2D 1231-1236, both Ninth Circuit cases, in which drugs were not found, but the courts nevertheless concluded that the assets were sufficiently linked to drug trafficking. And the Court pointed out that those also summary judgment cases? I believe Padilla is. I am not sure about United States v. U.S. Currency. But the Court pointed out in applying the aggregate of the facts test, look at the facts in the record, not the absence of facts, that could increase the possibility that assets were particularly linked to drug trafficking. And in connection with this case, what is critical and what my opponent ignores is the drugs and the drug paraphernalia and the claimant's admitted history of drug trafficking. I venture to say that if you leave those facts out of the mix of facts that go into the proverbial Boolean base, what are you left with in this case? Essentially, you're left with a large sum of money and a few other facts that are not uniquely pointed to drug trafficking. But if that is so, then I would argue that the cases that my opponent just cited specifically the 405,000 case and the 22 DeRosa case actually support the government's view. Because if all you have is a large sum of cash, then the declarant cannot say that that large sum of cash is tied to gambling, prostitution, or anything else, because a large sum of cash standing alone is insufficient to prove a tie. Therefore, the declarant who has testified that it was possible that the large sum of cash that the defendant asked to traceable to other criminal activity, if you remove the facts in this case, which are uniquely proof of drug trafficking, then the declarant's argument falls by its own weight. In addition, the declarant talks about the need to prove that the defendant that the drugs were in commercial quantities. That is not the rule. That has never been the rule. There is never – there is no rule that you have to show that the fair market value of the drug seized is the same as the fair market value of the assets that were seized. In fact, we cited a number of cases. Kennedy. What illegal drug was he dealing with? Marijuana? GBL. GBL. Which is a controlled substance analog of GHB, the date rape drug. And he was dealing with marijuana as well. But none of the dogs alerted, did they? Well, with respect to the GBL, again, it's odorless. Dogs would not alert to. I don't know. They don't, you know. Dogs have got a sense of smell that's thousands of times more acute than ours. I mean, how do we know that dogs wouldn't alert to it? You do not. But, again, there is no evidence in the record about the characteristics of these various drugs, GBL as opposed to marijuana. That is absolutely the case. And whose burden is that? Well, the burden with respect to each and every fact would be the government's burden. But, again, remember the point of the aggregate of the facts test. It's not what facts could be developed, what facts are not in the record. It's the aggregate of the facts that are in the record. So the cases that I cited, Padilla and 83,000, indicate that under this test, court should review the facts that are in the record and determine whether or not the facts in the record are sufficient to establish the link. You know, I wonder, isn't it easier just to try these cases? How long would a case like this take to try, a day? I have ‑‑ it is difficult to tell how long a case of this nature would take to try. But that wasn't ‑‑ that is not the issue with respect to what I am trying to address. I understand that, yes. What are the factors ‑‑ what are the factors that you mentioned, the evidence that supports this, if you could tick those off? The evidence that are unique to drug trafficking, if that is what Your Honor is asking, is the 54 bottles of GBL that were found. And that could be personal use, I gather, right? I don't think so. I don't ‑‑ there is no evidence in the record indicating that it was commercial quantities, but I don't believe that that can be commercial use. And we ‑‑ there was a conviction. The drug paraphernalia that was found and the large sum of cash in the home, along with claimants' admitted history of drug trafficking. Those factors, not even Mr. Levine argues, are not unique to drug trafficking. He ignores those factors, essentially. How about the drug paraphernalia? Could that be attributed to personal use? It is unclear if the drug paraphernalia could be attributed to personal use or not in this case. So we've got an unclear first one as to whether it's a commercial quantity or personal. It's unclear with regard to the drug paraphernalia, whether it's drug dealing or personal. What else have we got? We also have claimants' admitted history of drug trafficking. But recall, with respect to the commercial use, which is a very important point that I want to make sure I make clear, there is no requirement, we have cited cases for the government to tie assets to specific drug transactions. There is no requirement that the government show that the seized assets are valued at or about the same amount as the seized drugs. Well, why wouldn't there be? I mean, if he's being charged with drug trafficking and you're relying on the amount of drugs found, why wouldn't that be a very significant factor? It is an important factor. But recall that the items are subject to forfeiture not only if they represent traceable proceeds of drug trafficking, but also if the amount of items found in it suggest that the items were intended to be used for further drug law violations. Drugs violations or trafficking. It's a drug violation to have it, as a matter of fact, but aren't we talking about drug trafficking? We are talking about trafficking. To the extent the claimant could show that the amount of drugs in question, and he was only having the drugs for personal use, then there – then I suppose he could try and take the position that there is no connection between or no link between the two items. But in this case, recall that, and with respect to a number of cases where there are no drugs found at all, and specifically I would address – ask the Court to take a look at three specific cases, including the case that was cited by the district court in its decision, and that is U.S. v. $321,470, where there are five grand of cocaine found. And the Court still found that $321,000 – in the $321,000 case, that the currency was sufficiently linked to drug trafficking. And in other cases where there are no drugs found at all, I cited earlier the 83,310 case and the United States v. Padilla case, there were no drugs found at all in those two cases. Those are two nice circuit cases. And the Court nevertheless held that the assets were sufficiently linked to drug trafficking. Assets, I might add, in Padilla that I believe were working. And so that's why I'm asking, what was the basis of finding it, whether it was drugs in those cases? In those cases, those cases were both marijuana cases, and the Court found that the claimants, specifically in the Padilla, the 83,000 case, that was a situation where the claimant flushed something down a toilet, came out of a bathroom, and ticked an envelope underneath the bathroom stall. The courts found $83,000 in currency, and there was a dog hit on that currency. And so the Court held in that circumstance that there was a dog hit. There was a dog hit in that case. That's important. You keep trying to move from the facts of this case to the facts of other cases. What I really want to know is what facts in this case point to drug trafficking? If you're asking the facts that uniquely point to drug trafficking, which is not the standard I've gone through. Isn't it the standard on some registration? No, it is not. Well, yes, I think it is. The reason that we take the position that you do not have to prove that facts are unique to drug trafficking is that in the summary judgment cases that we have offered, the courts have never held that. It is impossible, because things like, for example, inconsistent statements can't possibly be unique to a particular type of activity. Because drug trafficking occurs in secret, as reflected in the Decarat case, the Second Amendment, where drug trafficking is often circumstantial, where somebody has a lack of legitimate income, combined with a number of other factors. But to show, to argue that you can't prove that drug trafficking is unique to a particular  And I think that's what we're trying to do in this case, is to show that it's not   that that was associated with drug trafficking because of the fair market value of those items and the claimant's lack of legitimate income. Over a 15-month period, the claimant had total income of approximately $696, according to EDD records. Kennedy. How do you tie that in with drug trafficking? How do we tie the specific vehicle? Under the cases, we are entitled to show a lack of legitimate income, combined with other evidence. And courts have held in this circuit that a large sum of currency found with drugs and drug paraphernalia at a home is strong probative evidence and strong circumstantial evidence of the link sufficient to satisfy the area of the facts test. That is how we tie the Ford vehicle to drug trafficking. We cannot specifically say that there was a specific transaction whereby the claimant obtained the Ford vehicle in exchange for drugs. But that isn't the burden on summary judgment. In other words, in other words, when you get right down to it, his income was $40,000. And he had this tremendous amount of cash. He had this nice truck. He had this expensive jewelry. And he admitted to using marijuana and selling marijuana, I think, when he was in high school. And so from that, you conclude that he could have only acquired the money and the property through drug trafficking, and therefore, it's all subject to forfeiture. And to oppose that application, all the claimant has to do is one thing, and that is say the money is not related to drug trafficking, it's related to legitimate income or it's related to a specific crime. The claimant did not offer any evidence in opposition in this case. The declaration is an evidence. It only speculates, but it doesn't satisfy Federal Rule of Civil Procedure 56e. But you've got the expert, Michael Levine. Mr. Levine doesn't offer any evidence. He doesn't offer any facts. He doesn't say that Mr. Boltinghouse, for example, told him that the money was derived from a legitimate source. The government's always putting on experts that just tell you how things operate and how they work and how criminals behave and all the rest of it. And so you're getting the same thing here. But we do with combination. And the wonder about Mr. Levine is why did he have so many different jobs? He didn't stick with one or he was so good, they moved him from one to another. I — if Mr. Levine had stated that the defendant assets were related to a specific legal source or to a specific crime, that would be a different question. But he can't state that. At first, when I saw the name, I thought maybe he was a former great public defender from Honolulu who's now up in Seattle. Who is a great public defender, yes. I thought he was trying his hand on something else now. Well, I'll tell you what is bothering me is the fact that the government has the ultimate burden of proof. Correct. And we have a summary judgment saying that there is no legitimate issue of fact to be tried because it is clear that all these — the money and the drugs and everything is tied to drug trafficking. And I don't think that it's required of the defendant to come forward and say anything. I think the government has to show that it is as a result of drug trafficking. And I'm just wondering if you've got enough. It doesn't sound like it. My response to that is the record in this case will show that based on the identical facts, the government responded to the claimant's motion to dismiss for failure to state a claim in response to the complaint. And as the Court knows, in making that determination, the district court was required to assume the truth of the facts the government alleged and determine whether those facts were sufficient on their own to show that the government had made a front-and-face case. And the Court denied the claimant's motion for — motion to dismiss at the pleading states on the grounds that those facts in combination were sufficient. And in this case, we're — But they state a claim. Yeah. Yeah, I understand. That's a whole different deal. I absolutely understand. It's a different issue and a different procedural aspect. But in response to this case, when you — in response to your question that the claimant could remain silent, I would argue that the claimant cannot remain silent because, as shown by that earlier decision, if you combine these facts together and stir them together under the aggregate of the facts test, they are enough. The claimant cannot remain silent. And that is why I believe the Court cited the National Union case, without getting into the facts, again, of that case. But you have to offer some facts under Federal Rule of Civil Procedure 56e, specific facts showing that a triable issue of material fact remains for trial. You don't have to offer any evidence to that, though, do you? You have to offer facts, which I think are probably evidence. You have to offer facts. I'm not sure that's right, that you have to offer facts, because I think you could rely on argument, Krishnan. You could. But if you review Mr. Levine, Mr. Levine's declaration, even applying — even if you assume that Mr. Levine's declaration was not — he doesn't apply the aggregate of the facts test. He just takes every fact in isolation and says this fact in isolation is insufficient to prove the link. He doesn't deal with the drugs and the drug paraphernalia, and he doesn't deny the drugs were in commercial quantities. He just says every fact by itself is not unique to drug trafficking. But the uniqueness to drug trafficking, that is not the — that is not the requirement. And we cited a case in our brief, an Eleventh Circuit case, that the government is not required to show that assets are uniquely linked to a particular crime. The government does not have to show and indicate that all other possible illicit activity is not tied to the defendant assets. All the government has to show under the aggregate of the facts test is by a preponderance of the evidence that it appears that the defendant assets are sufficiently connected with drug trafficking. And to your mind, a big factor here is that the — whatever, the claimant didn't testify, huh? He exercised his Fifth Amendment privilege. And this is a civil matter, so adverse inference can be drawn from that failure. An adverse inference can be drawn against the claimant in a civil matter. There is no prohibition against that in a civil matter, and no facts were provided. But there's no requirement that it be drawn. That is correct, absolutely. And that is why I think the district court indicated that it could have drawn an adverse inference against the claimant, but did not do so. It did not feel that that was necessary in order to find the government. Thank you, Your Honor. I have a lot to cover, and I'll do it as quickly as possible. Number one, the government's last comment prior to the Fifth Amendment discussion that Mr. Levine didn't address the aggregate of the facts. That's totally and completely incorrect. You're going to slow down. We've got enough time. That's totally and completely incorrect. I direct the Court's attention to page 133 of the court's excerpt, the excerpt of record in which Mr. Levine stated, and I quote, In conclusion, in consideration of all the facts set forth in the reports and declarations I have reviewed, particularly the lack of investigative effort that might have yielded convincing probable cause of possession with intent to sell, I find it no more likely that the defendant's assets seized were related to drug trafficking than any other criminal enterprise up to and including the invasion of tax. Let me stop you there and begin with the very last point, evasion of taxes. I've struggled with this. I can't figure out how evasion of taxes explains anything because it's not a source of cash. So what does evasion of taxes have to do with this? And there may be a criminal violation for that in there, but that doesn't generate cash itself. It just keeps the cash from going to the government. No, but explain why somebody claims the Fifth Amendment in response to discovery during the course of the case. My broad problem here, and I understand your arguments and I have concerns with the government's case. My broad problem here is that I read the declarations essentially saying, all right, there's no way to explain where this money came from in a lawful fashion. But it could have been any one of a number of unlawful activities. And he ticked off gambling, loan sharking, I think there were prostitution, there were a couple of others. I mean, it was a nice laundry list of bad things somebody can do. And you're right that just because it was a bad activity doesn't mean the government has the right to latch on to the proceeds, although it doesn't make a very appealing jury argument. And we're faced here with an issue of is it plausible that a reasonable fact finder, the jury, would come out with a different result when you have here at least some evidence that the claimant was linked to illegal substances in the form of possession, potentially for personal use, in the form of admission on his part of its own drug usage, admission on his part of drug dealing at some point in the past, albeit two years or nine years distant. And apparently no indication of actual involvement in gambling or prostitution or loan sharking or the other things. Now, I find it difficult to believe a jury is going to say, reach out of the blue, well, even though all the indications here is he's involved in this illegal substance, we think he's really running a prostitution ring on the side, so we're not going to let the government lay claim to this money. I mean, that just doesn't seem very plausible to me. Well, the problem is, and I've run into this argument for 20 years, if we had a general criminal forfeiture statute that said the proceeds of criminal conduct are subject to forfeiture, I wouldn't be here today. Because really the jury would be here. But your problem is you have to say it wasn't this one, it was that one, with no indication the defendant really had anything to do with loan sharking or prostitution. Not really. I have to say to the jury, what evidence have you heard of that there's drug trafficking by this individual? The only thing that you've heard of is that a dispute that he says, back when I was in high school, I was selling marijuana. I sold some marijuana with no discussion of the quantity or anything, versus their statement that it was two years ago. Everything else you've heard is indicative that there's some criminal conduct, but the judge is going to instruct you that you must find that it was drug trafficking. What evidence is there? Well, you know, you heard Mr. Levine up here say, look, I've investigated and participated in over 400 investigations of drug trafficking. This is what we find when we raid a drug trafficker's location. We find drug ledgers. There was no drug ledgers here, and the government hasn't explained that. But there's also nothing that indicates loan sharking or prostitution or gambling, and it's coming from some place. But it is important that the kinds of things that you find with drug dealers, you don't find here. And so if I'm a jury, I'm going to say, well, what? The kind of things you find with loan sharkers, you don't find here. And the kind of things you find with people running a numbers racket, you don't find here. That's not true, though, because you do have a money counting machine. You do have a lot of currency. You have currency hidden. You have inconsistent statements. I mean, what you're really saying is, well, the jury probably would have leaned in that direction. And my answer is, when the judge instructs them, they have to find evidence of drug trafficking. That is completely non-existent in this case, other than the statement that's in dispute. Now, I share Judge Fragerson's general curiosity. Some cases are easier to try than to get summary judgment. And this strikes me as a potential candidate for that, but it's irrelevant to where we are now. But I still got to say, it's hard for me to imagine a jury coming up with a different result, and at some level, that's really the test. Is it plausible that a reasonable fact finder would get a different result when there's nothing at all to suggest that the other illegal activity actually went on and could be a source of the program? I think the answer to your question is, and I will repeat it for just one more time, is the fact that, and the government said that we didn't come forward with any affirmative evidence. That's not true. Mr. Levine came forward and said, look, as a trained drug agent, these are the kinds of things you find with drug dealers. That's not here. That leads me to conclude that it's less than 50% that this is drug trafficking. And the jury was entitled to hear that. There's just some other brief points I wanted to make. Next, the government, I think in the pretrial memo, said that it would take two to three days to try this case. Next, as to the drugs that were found, the marijuana was one-tenth of a gram. That's about this much of a marijuana cigarette. The government even conceded that the steroids was a small amount of steroids. The brief comment about his income, he said in one year he had $40,000, and in no year he exceeded $60,000. He never said that that's all he made was the $40,000. We discussed the added facts. The drug paraphernalia, there's been absolutely no explanation of what the drug paraphernalia was. I think it was related to personal use. Oh, and that takes me to one other point, though, which is the government saying, well, this whole issue about commercial, the government's not required to show a commercial quantity of drugs. No, they're not. But if they're trying to argue that the money that this individual has at his house and his assets were purchased with drug proceeds, it would be helpful if they had some evidence of drug trafficking. And they have zero in this case, except for the disputed fact concerning the statement. Finally, I would like to conclude my comments with a quote from the government's brief, which I think clearly puts this entire issue in perspective. At page 42 of their brief, where they were arguing that the court could reject Mr. Levine's declaration, they cited this case called the United States versus $121,000 for the proposition about alternative hypotheses. And I'd like to read just one paragraph. The government need not connect the defendant currency to any particular drug transaction, nor must the evidence point to drugs to the exclusion of all other theories. That the evidence presented would support an alternative hypothesis, some other illicit activity, for example, does not prevent it being proven on the issue of probable cause. The large quantity of currency, the fact that Foster paid cash for his ticket, which was issued under a false name, it's an airplane case, and his nervous manner tend to suggest that the currency was tied to some illegal activity. In view of his history of drug violations, a reasonable person could believe that such illegal activity was, in fact, the exchange of a controlled substance. Thus, the district court did not err in holding the government established probable cause. That is a far different standard than what we face here today when we have a standard of preponderance of the evidence and the question of whether the jury was permitted or should have been permitted to draw the other inference from the evidence. The absence of evidence of drug trafficking, as pointed out by Mr. Levine in the general state of the record, along with the other facts that we've pointed out to this Court and which the Court has discussed today, suggest strongly, I think, compel the conclusion that the district court was in error in granting summary judgment. We may ultimately lose this case at trial. Hopefully, we will have the opportunity to see that result someday in the future. But the trier fact was entitled under the law to make that decision. Thank you very much. Thank you. The matter is stand submitted.
judges: Hug, Pregerson, Clifton